IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) 3:25-CV-00316 |
| (1) ONE RED, 2021 CHEVROLET | ) |
| CORVETTE, VIN 1G1YC2D49M5124854, | ) |
| SEIZED ON OR ABOUT OCTOBER 24, 2024; | ) |
| | ) |
| (2) APPROXIMATELY $58,019 IN U.S. | ) |
| CURRENCY SEIZED ON OR ABOUT | ) |
| OCTOBER 17, 2024; and | ) |
| | ) |
| (3) ONE GLOCK, MODEL 19GEN5, 9MM | ) |
| CALIBER PISTOL, SERIAL NUMBER | ) |
| CCKR957, SEIZED ON OR ABOUT | ) |
| OCTOBER 17, 2024 | ) |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

NOW COMES the United States of America, Plaintiff herein, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

**INTRODUCTION**

1. This is a civil action *in rem* against (a) one red, 2021 Chevrolet Corvette, VIN 1G1YC2D49M5124854, seized on or about October 24, 2024 (the "VEHICLE"), (b) approximately $58,019 in United States Currency seized on or about October 17, 2024 (the "CURRENCY"), and (c) one Glock, model 19Gen5, 9mm caliber pistol, serial number CCKR957 seized from the residence of Joseph Qwonte Norman ("Norman") on or about October 17, 2024 (the "GLOCK").

2. Norman was charged in a three-count indictment in the Western District of North Carolina for criminal offenses related to cocaine distribution (W.D.N.C. Case No. 3:24-CR-

1

00212). Norman pleaded guilty to one count of knowingly and intentionally distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

3. Because Norman's criminal count of conviction (Count 2) relates only to conduct occurring on or about August 31, 2022, the Government files this civil forfeiture complaint against the property seized during the investigation that is forfeitable because of its nexus to Norman's criminal activity, but as a matter of procedure, not criminally forfeitable through Count 2 alone.

4. As demonstrated by his guilty plea, Norman was a cocaine trafficker. A multi-year investigation by the Federal Bureau of Investigation ("FBI") uncovered evidence that (at least) from around August 2022, to around May 2023, Norman was a source of supply for a drug trafficking organization ("DTO") operating in, among other places, North and South Carolina.

5. A search of Norman's apartment upon his arrest revealed, *inter alia*, approximately 13.7 kilograms of cocaine from both the inside of the apartment and a bag that Norman threw over the apartment's balcony when the arrest team knocked on this door, the GLOCK, and bulk cash in the amount of $57,000 (with another $1,019 found on Norman's person).

6. Norman had no known legitimate income or employment history. Yet, he purchased the VEHICLE for $113,000 *in cash*—clearly using drug proceeds to do so. Likewise, the $58,019 in cash at his apartment found along with almost 14 kilograms of cocaine was derived from, and/or intended to be used in, his drug trafficking. And the GLOCK was used or intended to be used to facilitate Norman's drug trafficking. *See, e.g, United States v. Cooper*, 624 F. App'x 819, 821 (4th Cir. 2015) ("firearms are tools of the drug trade"); *United States v. Gomez*, 2024 WL 5089259, at *3 (D.N.M. Dec. 12, 2024) ("[D]ue to the inherently dangerous nature of drug trafficking it is common for drug dealers to possess firearms—so-called 'tools of the trade'—to protect themselves, their supply, and their locale.").

## GROUNDS FOR FORFEITURE

7. The VEHICLE is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as proceeds of unlawful drug activity in violation of the Controlled Substances Act, 21 U.S.C. §§ 841 and/or 846. Additionally, and alternatively, the VEHICLE is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(c) as property involved in violation of 18 U.S.C. § 1956 (money laundering).

8. The CURRENCY is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

9. The GLOCK is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(11) because it was used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846.

## NATURE OF THE ACTION

10. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

11. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

12. Venue is proper pursuant to 28 U.S.C. § 1395 because the VEHICLE, CURRENCY, and GLOCK were seized in the Western District of North Carolina and are now within the Western District of North Carolina.

13. Based on the following facts, verified by FBI Special Agent Alexander Hirst, this action seeks the forfeiture of all right, title, and interest in the VEHICLE, CURRENCY, and GLOCK.

**FACTS GIVING RISE TO FORFEITURE**

*The criminal investigation*

14. In February 2021, the FBI began an investigation into a DTO associated with Norman, culminating with a grand jury in the Western District of North Carolina returning an indictment charging Norman and others with, *inter alia*, a conspiracy to distribute cocaine ranging from at least on or about August 1, 2022, through on or about May 5, 2023. *See* WDNC Case No. 3:24-cr-00212, Doc. 1.

15. This Complaint does not detail the full extent of Norman's known drug trafficking activities, but certain illustrative details are provided below.

16. On August 31, 2022, agents were monitoring a federal wiretap when a co-conspirator called Norman. Norman told the co-conspirator that he had "one" more for him if the co-conspirator could turn it around quickly (meaning Norman could provide a kilo of cocaine to sell quickly).

17. The co-conspirator responded that he probably could, and needed to make a phone call. A few minutes later, the co-conspirator called Norman and told him he was out front of Norman's apartment building (at the Museum Tower Apartments in the Charlotte city center).

Physical surveillance confirmed the co-conspirator's vehicle was in the area of the Museum Tower Apartments.

18. Then, the co-conspirator called and texted with Derrick Reid, later meeting with Reid at the Alister Uptown apartments. Law enforcement observed Reid and the co-conspirator meeting in the parking lot, with Reid carrying a brown shopping bag back to his Black Mercedez Benz before leaving the area.

19. After this, the co-conspirator called Norman, who asked if the co-conspirator had the money, to which he responded affirmatively. Shortly after, the co-conspirator arrived back at Norman's apartment.

20. That same day, Reid was stopped by law enforcement in Lancaster County, South Carolina, for traffic violations. Law enforcement located a box inside a gift bag on the passenger floorboard of the Mercedes Benz that contained a large, compressed package of a powdered substance, which field tested positive for cocaine, and a digital scale.

21. Reid was placed under arrest and criminally charged at the state level. The powder substance was lab confirmed to be 1003 grams of cocaine powder with 92% purity.

22. Law enforcement obtained video footage from Norman's apartment complex for August 31, 2022, which confirmed Norman delivered the suspected cocaine to the co-conspirator.

23. On October 17, 2024, law enforcement went to Norman's apartment to serve an arrest warrant following his federal indictment.

24. After arrival, a properly trained and certified drug detection K9 alerted to the presence of narcotics at/from the door of Norman's apartment.

25. Agents then knocked on the door of Norman's apartment and announced their presence and purpose. The agents at the door heard a shuffling and thudding noise behind the closed door, and roughly a minute later, Norman answered the door and was taken into custody.

26. A safety sweep revealed the GLOCK and a 30+ round magazine in plain view, as well as a firearms box for a Smith and Wesson 9mm handgun:



27. Witnesses reported to law enforcement that a bag and "bricks" had landed on an awning and the street below Norman's apartment. The arrest team observed the bag and its contents, and after its retrieval, the contents—which were compressed kilogram bricks of a powder substance—field tested positive for cocaine.

(*continued on following page*)

28. CCTV footage obtained from an adjacent building revealed that Norman threw the bag of cocaine bricks off his apartment balcony at roughly the time of the arrest team's arrival:






29. That same day (October 17, 2024), law enforcement also executed a federal search warrant at Norman's apartment, which resulted in the seizure of (a) approximately 13.7kg of

cocaine from both the inside of the apartment and the bag that had been thrown over the balcony by Norman, and (b) the CURRENCY:



***The VEHICLE'S purchase and straw registration***

30. The VEHICLE is a red, 2021 Chevrolet Corvette:



31. On August 30, 2022, a federal wiretap intercepted a call between Norman and a co-conspirator.

32. In the conversation Norman said he had "two left," "I went and bought a damn car," a "21 stingray," and "I paid for the mother***er you know what I am saying." NORMAN went on to say that he "paid $113,000 for everything, cash. So, I don't have nothing lying around." He later continued, "I actually spent part of the profit from the move buying the car before I made it. So now I need everything, you hear what I am saying? What happened to your people?" When Norman was then asked, "where you at right now though?", he responded "23."

33. This conversation represents Norman telling his co-conspirator that Norman was charging $23,000 for a kilogram of cocaine, and, Norman could not provide cocaine on credit without being paid upfront because Norman spent all his money from drug proceeds on the VEHICLE.

34. Records searches reveal that NORMAN has no known legitimate employment income (with which to otherwise purchase the vehicle). Conversely, based on the totality of the investigation, there is reason to believe NORMAN has earned substantial profits from trafficking narcotics.

35. Moreover, a review of the VEHICLE's registration records reveals that it was registered to a person in Oklahoma (J.C.) on April 7, 2022, with an Oklahoma license plate number LMK615, and the VEHICLE continued to be registered in J.C.'s name, despite that: (a) law enforcement found the key for the VEHICLE in Norman's Charlotte apartment, and (b) a service receipt for the VEHICLE (with matching VIN) detailed service performed by Parks Automotive Group on October 4, 2024, for Norman.

36. Law enforcement contacted J.C. by phone, who stated that he sold the car to an auto company from Texas, was paid at a bank in Oklahoma after signing a bill of sale, and has no continuing ownership interest in it. Additionally, physical surveillance has confirmed that prior to its seizure, the VEHICLE had a dealer tag (ID132577) on it, rather than the Oklahoma license plate associated with J.C.'s registration/ownership.

37. Drug traffickers often place assets in other person's names, even though the drug dealers continue to use these assets and exercise dominion and control over them. Thus, Norman most likely intentionally obscured the registration and used a dealer license plate to in an attempt to hide his activities from law enforcement.

38. Agents obtained a federal seizure warrant for the VEHICLE, which was executed on October 25, 2024. A search of the VEHICLE revealed two loaded Glock 9mm magazines and various documents with Norman's name on them, including an auto insurance card for the VEHICLE and a Blue Cross Blue Shield of North Carolina insurance card for Norman.

39. On November 25, 2024, Norman pled guilty to cocaine distribution. In his plea agreement, Norman agreed to the forfeiture of the VEHICLE, CURRENCY, and GLOCK, and waived any rights to notice of forfeiture.

**FIRST CLAIM FOR RELIEF – THE 2021 CHEVROLET CORVETTE**
**21 U.S.C. § 881(a)(6)**
**18 U.S.C. § 981(a)(1)(c)**

40. The United States incorporates by reference the allegations set forth in the preceding paragraphs above as if fully set forth herein.

41. The VEHICLE is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as proceeds of unlawful drug activity in violation of the Controlled Substances Ac., 21 U.S.C. §§ 841 and or

846. Additionally, and alternatively, the VEHICLE is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(c) as property involved in violations of 18 U.S.C. § 1956.

## SECOND CLAIM FOR RELIEF – APPROXIMATELY $58,019 IN U.S. CURRENCY
## 21 U.S.C. § 881(a)(6)

42. The United States incorporates by reference the allegations set forth in the preceding paragraphs above as if fully set forth herein.

43. The CURRENCY is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

## THIRD CLAIM FOR RELIEF – THE GLOCK, MODEL 19GEN5
## 21 U.S.C. § 881(a)(11)

44. The United States incorporates by reference the allegations set forth in the preceding paragraphs above as if fully set forth herein.

45. The GLOCK is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(11) because it was used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846.

## CONCLUSION AND PRAYER FOR RELIEF

46. By virtue of the foregoing, all right, title, and interest in the VEHICLE, CURRENCY, and GLOCK vested in the United States at the of the commissions of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States:

WHEREFORE, the United States of America respectfully prays the Court that:

1. A warrant for the arrest of the VEHICLE, CURRENCY, and GLOCK be issued;

2. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. Judgment be entered declaring the VEHICLE, CURRENCY, and GLOCK to be condemned and forfeited to the United States of America for disposition according to law; and

4. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the VEHICLE, CURRENCY, and GLOCK, as required by 28 U.S.C. § 1921.

Respectfully submitted this the 9th day of May, 2025.

RUSS FERGUSON
UNITED STATES ATTORNEY

/s/ Seth Johnson
J. Seth Johnson
Texas No. 53217
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 338-3159
Email: seth.johnson@usdoj.gov

## VERIFICATION

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 8 day of May, 2025.

_____
Alexander Hirst
Special Agent, FBI